```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/13/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                     :
ERIC LYLE WILLIAMS,                 :
                     :
               Movant,       :
                     :           25-mc-00122 (LJL)
     -v-                   :
                     :        MEMORANDUM AND
NBC UNIVERSAL MEDIA LLC,      :            ORDER
                     :
              Respondent.   :
                     :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Respondent NBC Universal Media, LLC ("NBCU") moves for leave to file an

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Dkt. No. 23.  The motion is denied.

## BACKGROUND AND PROCEDURAL HISTORY

Familiarity with the prior proceedings in this case is presumed.  Williams is facing a

death sentence imposed by a state court in Texas stemming from his conviction for capital

murder.  He initiated this case by filing a motion to compel on March 24, 2025.  Dkt. No. 1.  He

sought to enforce a subpoena issued to NBCU as part of his federal habeas case, which is

pending in the United States District Court for the Northern District of Texas.  Dkt. No. 2 at 2.

The subpoena seeks footage of interviews recorded in the production of two *Dateline* episodes.

Dkt. No. 3-5 at 4.  NBCU objected to the subpoena on the basis of the journalists' privilege.

Dkt. No. 3-6.

On August 25, 2025, the Court issued an order granting in part and denying in part the

motion to compel (the "Opinion and Order").  Dkt. No. 19; *Williams v. NBC Univ. Media LLC*,

2025 WL 2437381 (S.D.N.Y. Aug. 25, 2025).  The Court found that the journalists' privilege

applied to the footage sought through the subpoena.  *Id.* at *6–7.  The Court then applied the

standard established by the Second Circuit in *Gonzales v. National Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999).  The Court considered whether the footage sought by Williams was "of likely relevance to a significant issue in the case," and whether the information contained in the footage was "reasonably obtainable from other available sources."  *Williams*, 2025 WL 2437381, at \*5 (quoting *Gonzales*, 194 F.3d at 36).  The Court rejected the motion to compel as to most of the outtakes sought by Williams, including those of the four attorneys and four law enforcement officers involved in the investigation and prosecution of the case against Williams.  *Id.* at \*7–9.  It analyzed the broadcast portions of the *Dateline* episodes in detail against the claims in Williams's habeas petition to determine whether the outtakes were likely to contain information of relevance to an issue in the case, and the Court determined that they were not.  *Id.*  The Court found that Williams had not satisfied the *Gonzales* standard with respect to those requests because he had "'ma[de] only general claims that the outtakes [were] likely to contain relevant material' and failed to point to any 'particular interview or outtake that would provide the evidence [he sought].'"  *Id.* at \*9 (quoting *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013)).

The Court reached a contrary conclusion with respect to a single interviewee, Kim Williams, who was Williams's wife.  *Id.* at \*1.  He involved her in the murder scheme, for which she too was indicted and charged with capital murder.  *Id.*  Ultimately, she pled guilty and agreed to testify against Williams, inculpating him at the penalty stage of his death penalty trial.  *Id.*  At the penalty stage, the State relied upon Williams's murder of three persons who were involved in the state-court prosecution of him for theft and burglary.  *Id.*  Kim Williams also testified that after Williams had killed two of his victims, she and her husband celebrated by grilling steaks and were in a "happy, joyous" mood.  *Id.* at \*3.  After her testimony, the jury returned a death

sentence.  *Id.* at *1.  In her *Dateline* interview, Kim Williams gave a different account of the "steak" incident, after seemingly being asked questions about her trial testimony.  *Id.* at *3.  In her retelling, the two were not celebrating the murders but having a pre-arranged regular Easter weekend meal, her testimony at trial was untrue, and she was using drugs at the time of the murders.  *Id.*

The Court concluded that the outtakes of Kim Williams's interview were likely relevant to a significant issue with respect to Williams's habeas petition—whether the State of Texas had withheld material impeachment material.  *Id.* at *10.  Based on a close review of the interview on *Dateline*, the Court concluded that "Williams's assertion that the Kim Williams outtakes would be relevant to his *Brady* claim is not based purely on speculation but rather on reasonable inferences from the questions Kim Williams was asked and the answers she gave and the way in which the footage was edited."  *Id.* at *12.  Turning to the second prong of the Gonzales test, the Court found that the information sought by Williams was "not reasonably obtainable from other available sources."  *Id.* at *13 (quoting *Gonzales*, 194 F.3d at 36).  The Court acknowledged that as a general matter, a litigant is required to seek information directly from the source before obtaining outtakes of a media interview.  *Id.*  The Court also held that it was insufficient for Williams to assert that a media interview was more likely to yield the requested information than a deposition because a media interview was "conducted in a 'relaxed, comfortable and trusting atmosphere.'"  *Id.* (quoting *McCray*, 991 F. Supp. 2d at 470).  It held, however, that "Williams ha[d] identified several factors . . . that, when considered in combination, ma[de] it unreasonable to assert simply that he could get the same information from deposing Kim Williams that he would get from receiving the outtakes."  *Id.* at *14.  Those facts included that, in answering questions posed directly by Williams, Kim Williams would be forced to address the person who,

3

on her account, had manipulated her into participating in a conspiracy to kill three people and to commit capital murder and who had engaged in conduct that could have resulted in her execution. *Id.* It also included the fact that Kim Williams would be able to invoke her Fifth Amendment rights to avoid the non-speculative risk of prosecution. *Id.*

On September 22, 2025, NBCU filed a notice of appeal from the Opinion and Order. Dkt. No. 20. On January 5, 2026, the Court of Appeals "So Ordered" the parties' stipulation withdrawing the appeal. Dkt. No. 21. On January 27, 2026, NBCU filed this motion for leave to appeal the Opinion and Order, along with a supporting memorandum of law. Dkt. Nos. 22–23.

## DISCUSSION

Section 1292(b) of Title 28 of the United States Code provides a limited exception to the general rule that an appeal lies only from a final judgment of the District Court. That rule also applies in ancillary proceedings where a court compels compliance with a subpoena: "The general rule persists that appeal cannot be taken from an order granting discovery in an ancillary proceeding. It has been explained on grounds similar to those advanced in other discovery settings to justify insistence on the disobedience and contempt path to review." 15B Wright & Miller's Federal Practice & Procedure § 3914.24 (3d ed. 2025); *see Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) ("[C]ourts have held that a discovery order is not immediately appealable unless the protesting party refuses to perform and is held in contempt."); *Catskill Dev., LLC v. Park Place Ent. Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y. 2002) (party whose motion to quash a subpoena was denied "is not without a remedy" absent certification for appeal because it "can decline to honor the subpoena, be held in contempt, and appeal the contempt order"— "[t]hat is the customary remedy for a party aggrieved by the failure to quash a subpoena"); *see also In re Am. Tobacco Co.*, 866 F.2d 552, 556 (2d Cir. 1989) (orders requiring production in an ancillary proceeding "are not final in the absence of a contempt adjudication").

4

The requirements for an interlocutory appeal under Section 1292(b) are narrow and demanding. *See McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.) ("Th[e] three prerequisites create a significant hurdle to certification, and the barrier is elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990))). The statute provides that "leave to appeal should be granted only if (1) the appeal 'involves a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Lehman Bros. Holdings Inc.*, 2019 WL 2023723, at *3 (S.D.N.Y. May 8, 2019) (quoting 28 U.S.C. § 1292(b)). "The party seeking leave to appeal bears the burden of demonstrating that all three criteria have been met." *Id.* "Even when all three criteria are met, a district court retains 'unfettered discretion' to deny leave to appeal for 'any reason,' including judicial economy." *Id.* (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014)).

NBCU argues that the Court should grant interlocutory review in this case prior to entry of a contempt finding because "[s]ince *Gonzalez* was decided in 1998, the Second Circuit has only addressed one case concerning the application of the reporter's privilege to newsgathering involving a non-confidential source," and "this would be the first case in which an appellate court addresses the reporter's privilege in the context of a subpoena served in connection with a habeas proceeding." Dkt. No. 23 at 5. Those are insufficient reasons for certifying a question under Section 1292(b). The Court held that the context of a habeas proceeding did not alter the applicability of the journalists' privilege, *Williams*, 2025 WL 2437381, at *7, and applied the

standards established in *Gonzales*, *id.* at \*7–14.  Moreover, in *Gonzales* itself, the seminal case in the Second Circuit on the standard to apply for outtakes of interviews with non-confidential sources, the court heard the appeal only after the subpoena recipient—once again, NBCU— failed to comply and was held in contempt.  *Gonzales*, 194 F.3d at 32.  NBCU has provided no sufficient reason why the same route should not be followed here.

NBCU fails to identify a controlling question of law as to which there is substantial ground for difference of opinion.  Substantial grounds for differences of opinion exist where "there is genuine doubt as to whether the district court applied the correct legal standard in its order."  *Consub Del. v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008).  But NBCU does not dispute that the Court applied the correct *Gonzales* standard here—that is why the Court denied Williams's request as to the majority of the material sought.  The Court's decision granting the motion as to the outtakes of Kim Williams was narrow and did not depart from the rulings of the Circuit or other district courts.  It granted the motion only because (1) Williams made a showing, based on the "reasonable inferences from the questions Kim Williams was asked and the answers she gave and the way in which the footage was aired," *Williams*, 2025 WL 2437381, at \*12, that the outtakes would likely be of relevance to a significant issue in Williams's habeas petition; and (2) based on the "unique facts of this case" and a number of factors "considered in combination," the information Williams sought from the outtakes was not reasonably obtainable from any other source, *id.* at \*15.

NBCU has argued that the Court's decision departs from the ruling of the District Court in *Pugh v. Avis Rent a Car Sys.*, 1997 WL 669876, at \*5 (S.D.N.Y. Oct. 28, 1997), and misapplies the "likely relevance" standard.  Dkt. No. 23 at 6–7.  The Court cited *Pugh* in

rejecting Williams's argument that he should be able to obtain outtakes of the eight other interviews, as his showing was based on speculation, *Williams*, 2025 WL 2437381, at *7, and it ruled in Williams's favor as to the Kim Williams's interview only after reviewing the habeas proceedings and the *Dateline* segments in detail and concluding that "the *aired* portion of Kim Williams's interview suggest that *unaired* portions of the interview are likely relevant to the . . . significant issues" raised in the habeas petition, *id.* at *11 (emphasis in original). NBCU takes issue with the Court's reiteration of the statement that the standard of relevance is "low" when non-confidential sources are involved, *id.* at *7 (quoting *Sokolow v. Pal. Liberation Org.*, 2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012)), and the Court's use of the conditional in its statement that "the outtakes may shed light on whether the State had information that Kim Williams's testimony was false or at least inaccurate," *id.* at *11. However, nothing turned on the Court's statement that the standard of relevance was "low." The Court was simply making the point that *Gonzales* itself makes that a subpoena seeking information about non-confidential sources need not meet the stringent standards for subpoenas directed to confidential sources because "the nature of the press interest protected by the privilege is narrower." *Gonzales*, 194 F.3d at 36. And the Court was not forging any new ground in using the word "may" with respect to a subpoena directed to information that—by definition—has not already been disclosed. The Second Circuit used the same word in *Gonzales*. *See id.* ("The District Court reasonably found [the outtakes] may assist the trier of fact in assessing whether Deputy Pierce had probable cause to stop the NBC vehicle and might help determine whether he engaged in a pattern or practice of stopping vehicles without probable cause, as the Plaintiffs allege.").

NBCU also argues that there exists a controlling question of law as to which there are substantial grounds for disagreement in the Court's determination that the subpoenaed

information with respect to Kim Williams was not "reasonably obtainable from other available sources," *Gonzales*, 194 F.3d at 36. Dkt. No. 23 at 7–8. It suggests that the Court should have applied an "exhaustion" requirement and that a substantial question is presented with respect to the Court's reliance on the fact that Kim Williams would be able to assert her Fifth Amendment rights in not answering questions at a deposition. *Id.* But NBCU does not dispute that the Court applied the correct legal standard. *Gonzales* distinguished between subpoenas directed to information from confidential sources and those directed to information from non-confidential sources. With the former, the movant must show that the requested information is "not obtainable from other available sources." *Gonzales*, 194 F.3d at 33 (quoting *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982)). However, "when protection of confidentiality is not at stake, the privilege [is] more easily overcome." *Id.* at 36. The movant must show that the requested discovery is "not reasonably obtainable from other available sources." *Id.* In short, as NBCU itself suggests, the question is not whether there exist any other sources for the requested information but whether—as the Court held—the information is "reasonably obtainable" from those other sources. In reaching the determination that the movant had satisfied his burden here, the Court did not rely exclusively on the availability of the Fifth Amendment but on a combination of factors. The case thus also does not present the question whether the likely availability of a privilege or a Fifth Amendment right *vel non* insulates the subpoenaing party from exhausting all reasonable alternatives. Dkt. No. 23 at 8.

The application of an established privilege to the particular facts of a case presents "at the very least, 'mixed questions of law and fact,' resolution of which 'would require the Second Circuit to review this [c]ourt's application of the law to the evidence adduced' in the motion to compel." *In re Aggrenox Antitrust Litig.*, 2018 WL 834228, at *6 (D. Conn. Feb. 12, 2018)

(quoting *Century Pac. v. Hilton Hotels Corp.*, 547 F. Supp. 2d 369, 371 (S.D.N.Y. 2008)).  It does not present a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Id.* (internal quotation marks and citation omitted); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) ("[Q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." (citation omitted)).  Reasonable persons might reach different conclusions with respect to the application of the law to the facts of this case.  But that is so in many cases involving discovery questions.  And, as NBCU itself appears implicitly to concede, it undoubtedly will be the case in many situations involving subpoenas to the press.  Even if reasonable jurists might come to different conclusions regarding the application of *Gonzales* to the unique facts presented here, that is not enough to permit interlocutory review.  *See, e.g.*, *In re Aggrenox Antitrust Litig.*, 2018 WL 834228, at *8 (explaining that the fact that "different judges might disagree with regard to whether" an asserted privilege applies to discovery material "is not enough to justify interlocutory review of a 'matter[] . . . that rest[s] primarily in the wise discretion of experienced trial judges'" (quoting *Am. Exp. Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 280 (2d Cir. 1967))).  Because NBCU has not met the standard for interlocutory appeal under Section 1292(b), the Court must deny its motion.

## CONCLUSION

For the foregoing reasons, NBCU's motion to certify the Opinion and Order for interlocutory appeal under 28 U.S.C. § 1292(b) is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 22.

SO ORDERED.

Dated: April 13, 2026
     New York, New York

                                     LEWIS J. LIMAN
                          United States District Judge